* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Taylor. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Taylor with modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Mellon HR Solutions was insured at the time of the alleged incident by the Travelers Insurance Company.
2. The parties were subject to the North Carolina Workers' Compensation Act at the time of the incident on May 15, 2002, the employer employing the requisite number of employees to be bound under the provisions of said Act.
3. Plaintiff suffered a compensable injury on May 15, 2002.
4. Plaintiff at the time of the injury had an average weekly wage of $669.23, yielding a compensation rate of $446.18.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On May 15, 2002, plaintiff sustained an admittedly compensable injury by accident resulting in injury to her neck, back and shoulder when she fell at work. As a result of plaintiff's fall, she also sustained multiple fractures of her teeth, was rendered unconscious and suffered a concussion.
2. Plaintiff was taken by EMS to Western Wake emergency services where she was treated and released to the care of her primary physician, Dr. Douglas Hammer.
3. Plaintiff was treated conservatively by Dr. Hammer, a board-certified family practice doctor, with medications and physical therapy. Plaintiff continued to have problems with her right knee, headache and left neck pain, and a MRI was taken of the right knee. Based on the MRI, plaintiff was referred to Dr. David Boone, at Raleigh Orthopaedic Clinic for her right knee.
4. On July 8, 2002, plaintiff presented to Dr. Boone, who was of the opinion that plaintiff suffered from degenerative disease in her right knee as well as a partial tear of the anterior cruciate ligament. Dr. Boone referred plaintiff to Dr. Cara Siegel, a physiatrist, for treatment of her back and shoulder complaints and also recommended a psychiatric evaluation.
5. On August 1, 2002, plaintiff presented for treatment with Dr. Siegel who obtained films of plaintiff's spine. These films revealed significant degenerative changes in plaintiff's cervical and lumbosacral spine. Dr. Siegel was concerned that plaintiff's films revealed pinching of the spinal cord in the neck and referred plaintiff to Dr. Daniel Albright, an orthopaedic surgeon.
6. Plaintiff presented to Dr. Albright on October 29, 2002. At that time, plaintiff complained of regularly falling and losing her balance, and Dr. Albright was of the opinion that plaintiff had severe spinal cord problems. Following a November 2002 CT-myelogram and significant worsening and progression of plaintiff's symptoms, Dr. Albright recommended immediate surgery.
7. On February 12, 2003, plaintiff underwent a C6-7 anterior diskectomy, structural allograft fusion plating performed by Dr. Albright. Plaintiff received follow-up care at Wake Rehabilitation Hospital and was later transferred to WakeMed Zebulon-Wendell Skill Nursing Facility.
8. Following plaintiff's surgery she did not improve, instead her condition worsened severely.
9. Plaintiff left rehab in June, 2003 and moved into an apartment where she had a contact guard for standby assistance and an aid for two to three times a week to assist with cooking and cleaning.
10. Dr. Albright was of the opinion that plaintiff was totally and permanently disabled from any job. He was of the opinion that plaintiff had a poor prognosis as she is weak and her spinal cord is sick. He was of the opinion that plaintiff would need treatment for the rest of her life.
11. Dr. Albright was of the opinion that plaintiff had a pre-existing small spinal canal with arthritis and bone spurs. However, he was of the opinion that plaintiff's conditions were not causing her any problems and she was not experiencing significant symptoms until her May 15, 2002 compensable fall aggravated her pre-existing conditions. He was further of the opinion that plaintiff's compensable fall caused the ensuing weakness and nerve problems and that the fall is what necessitated her spinal surgery. Dr. Albright was further of the opinion that plaintiff's depression was caused by her back condition.
12. Dr. Hammer was of the opinion that plaintiff's compensable fall caused her back pain and the resulting weakness in her legs and numbness and weakness of the legs and left arm and resulting acute and chronic pain and depression.
13. Dr. Hammer was of the opinion that plaintiff is primarily wheelchair bound, can only stand for a short period of time, cannot walk at all, is unable to use her left arm, and might be developing some weakness in the right arm.
14. Plaintiff, following her compensable injury, has also begun taking Pepcid for reflux and a constipation medication. In Dr. Hammer's opinion, these conditions are common to people who are wheelchair bound and were caused or significantly contributed to by plaintiff's compensable injury.
15. At the time of the hearing, plaintiff was on Lexapro, Wellbutrin, Vicodin, Neurotin and Motrin to treat her pain and depression. Both Dr. Albright and Dr. Hammer were of the opinion that these medications were necessitated by plaintiff's compensable injury and the resulting pain which necessitated surgery.
16. Finally, plaintiff is on Diovan HCT, a blood pressure medication. Although, Dr. Hammer was of the opinion that plaintiff's fall could have caused an increase in her blood pressure, he was unable to state this opinion to a reasonable medical certainty.
17. At the time of the hearing, plaintiff was experiencing a burning pain 24 hours a day from her neck into her upper shoulders and was completely restricted to a wheelchair. Plaintiff is suffering from depression and memory problems.
18. It is the opinion of Dr. Hammer that plaintiff cannot perform the usual household chores to the extent that some days she is unable to tie her shoe. Plaintiff fatigues easily and is primarily wheelchair bound. Plaintiff is not capable of shopping or cleaning.
19. It is medically necessary for plaintiff's medications to be monitored by a physician in the opinion of Dr. Hammer. It is further the opinion of Dr. Albright that he should see plaintiff periodically for the rest of her life.
20. Following the hearing, defendants conceded in their brief that plaintiff is permanently and totally disabled and no longer contest that matter.
21. On May 15, 2002, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer.
22. As a direct and proximate result of plaintiff's May 15, 2002 compensable injury, plaintiff sustained injury to and aggravated pre-existing conditions in her back, knee, neck and head and developed depression.
23. Plaintiff's May 15, 2002 compensable injury materially aggravated pre-existing spinal and knee conditions.
24. As a direct and proximate result of plaintiff's compensable injuries, plaintiff has been unable to work since May 15, 2002 and continues to be unable to work.
25. As a direct and proximate result of plaintiff's May 15, 2002 compensable injury, plaintiff has extreme pain in her neck and shoulders, upper extremity dysfunction in the left worse than right, a weak left lower extremity and numbness and weakness in her left hand and is completely wheelchair bound.
26. As a direct and proximate result of plaintiff's compensable injuries, plaintiff is totally and permanently disabled from work.
27. As a direct and proximate result of plaintiff's compensable injuries, plaintiff is unable to transport herself for shopping or to perform general shopping and general household cleaning.
28. Plaintiff is entitled to have transportation services provided by defendant-employer for medical treatment as well as general needs.
29. Plaintiff is not entitled to further cleaning services.
30. To the extent the same are reasonably designed to effect a cure, provide relief or lessen plaintiff's disability, defendants shall provide all medical treatment incurred by plaintiff as a result of her compensable injury, including but not limited treatment and medications for her pain, depression, treatment by Dr. Hammer and Dr. Albright as well as a motorized wheelchair and general transportation services.
31. Plaintiff has failed to prove by the greater weight of the evidence that her high blood pressure, acid reflux or indigestion is causally related to the compensable injury. Therefore, defendants are not required to pay for prescriptions for these unrelated conditions.
32. There is a substantial risk that plaintiff will need future medical treatment for her compensable conditions.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On May 15, 2002, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. §97-2(6).
2. As a direct and proximate result of plaintiff's May 15, 2002 compensable injury, plaintiff sustained injury to and aggravated pre-existing conditions in her back, knee, neck and head and developed depression. N.C. Gen. Stat. § 97-2(6). Plaintiff's high blood pressure, acid reflux and indigestion are not causally related to the injury by accident, and are not compensable. Id.
3. As a direct and proximate result of plaintiff's compensable injuries, plaintiff has been unable to work since May 15, 2002 and is totally and permanently unable to work. N.C. Gen. Stat. §97-29.
4. As a direct and proximate result of plaintiff's compensable injuries, plaintiff is unable to transport herself for shopping or to perform general shopping and is entitled to have transportation services provided by defendant-employer for medical treatment as well as general needs. N.C. Gen. Stat. §97-25.
5. To the extent the same are reasonably designed to effect a cure, provide relief or lessen plaintiff's disability, defendants shall provide all medical treatment incurred by plaintiff as a result of her compensable injury, including but not limited treatment and medications for her pain, depression, treatment by Dr. Hammer and Dr. Albright as well as a motorized wheelchair and general transportation services. N.C. Gen. Stat. § 97-25. Defendants shall not be required to pay for additional maid services or prescriptions for unrelated conditions. Id.
6. There is a substantial risk that plaintiff will need future medical treatment for her compensable conditions. N.C. Gen. Stat. § 97-25.1.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendants shall pay permanent and total disability compensation to plaintiff at the rate of $446.18 per week from May 15, 2002 and continuing for the remainder of plaintiff's life. This amount is subject to an attorney's fee as contained in Paragraph 2.
2. A reasonable attorney's fee in the amount of 25% of the compensation benefits awarded to plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid by defendants by deducting from the sums owed plaintiff and paying every fourth check to plaintiff's counsel.
3. Defendants shall provide plaintiff with a motorized wheelchair.
4. Defendants shall provide plaintiff with transportation services for medical treatment and general life needs.
5. Defendants shall pay all medical expenses incurred or to be incurred as a result of plaintiff's compensable injury including treatment not only for her back conditions but her knee condition and depression as long as the same are reasonably designed to effect a cure, provide relief or lessen plaintiff's period of disability. Defendants shall provide all plaintiff's future medical expenses for these conditions as well.
6. Defendants shall pay the costs.
This the ____ day of January, 2006.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER